**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FRANK S. WALKER, M.D., § § Plaintiff, § v. § § § CAUSE NO. 2:17-cv-00066 MEMORIAL HEALTH SYSTEM OF § EAST TEXAS D/B/A CHI ST. LUKE'S § HEALTH MEMORIAL HOSPITAL § LUFKIN, DAVID BAILEY, M.D., AND § HUNT HUBER, M.D., § § Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT, INCLUDING FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Frank Walker, M.D. ("Dr. Walker") files this Original Complaint against Defendants Memorial Health System of East Texas d/b/a CHI St. Luke's Health Memorial Lufkin ("Memorial Lufkin"), David Bailey, M.D. ("Dr. Bailey"), and Hunt Huber, M.D. ("Dr. Huber") (collectively "Defendants"), and would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff Dr. Walker is a resident and citizen of Angelina County, Texas.

2. Defendant Memorial Health System of East Texas d/b/a CHI St. Luke's Health Memorial Lufkin is a non-profit corporation organized under the laws of the State of Texas with its principal place of business in Lufkin, Texas.

3. Defendant David Bailey, M.D. is a resident and citizen of Angelina County, Texas. Defendant Dr. Bailey was at all times herein the Chief Medical Officer of Memorial Lufkin.

4. Defendant Hunt Huber, M.D. is a resident and citizen of Angelina County, Texas. Defendant Dr. Huber was at all times herein the President of the Medical Staff, Chairman of the Memorial Lufkin Medical Executive Committee, and an agent of the Hospital.

## II. VENUE AND JURISDICTION

5. Venue is proper in this district pursuant to 28 U.S. Code § 1391 because a substantial part of the events and/or omissions giving rise to this Complaint occurred in this district.

6. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

   b. 28 U.S.C. § 1343, which gives district courts jurisdiction over actions to secure civil rights extended by the United States government; and

   c. 28 U.S.C. § 1367, which gives the district court supplemental jurisdiction over state law claims.

## III. BACKGROUND

7. This is an action against Memorial Lufkin and some of its doctors arising out of an inherently unreasonable, discriminatory, anti-competitive, arbitrary and capricious peer review investigation instigated and driven by competitors which failed to comply with the Health Care Quality Improvement Act ("HCQIA") and was designed to discriminate against and minimize and/or eliminate Dr. Walker as a competitor in the Lufkin, Texas surgical market and surrounding areas.

8. Plaintiff Dr. Walker is a general surgeon who, among other things, provides colon surgery procedures to patients in Lufkin and Livingston, Texas. Dr. Walker graduated from The University of Texas at Austin with a BA in Biochemistry and attended medical school at The University of Texas Southwestern Medical School in Dallas, obtaining his medical degree in

1985. He completed an internship and residency in general practice in Grand Rapids, Michigan, then returned to Texas to begin his career as a surgeon. After practicing in the Kingwood/Humble area for approximately 10 years, he began a surgical practice in Livingston, Texas in 2003. In 2012, Dr. Walker sought to expand his practice to Lufkin and applied to join the Memorial Lufkin Medical Staff. He obtained active staff privileges in December of 2013. Dr. Walker participated in general surgery call in both Lufkin and Livingston pursuant to separate Professional Services Agreements (sometimes referred to as "on call" contracts).

9. Beginning in and around February of 2016, Defendants commenced a peer review investigation of Dr. Walker, ostensibly based upon "concerns" regarding two complex patients. The evidence will show, however, that neither case—nor any others that were ultimately reviewed by Defendants—presented facts upon which adverse recommendations could reasonably be based.

10. The initial unsupported, discriminatory and wrongful recommendation against Dr. Walker was made by the Memorial Lufkin Medical Executive Committee ("MEC"), which was chaired by Defendant Dr. Huber, who is also the President of the Medical Staff. Specifically, the MEC recommended certain adverse actions against Dr. Walker seriously limiting his practice and ability to provide full services to the Lufkin community and surrounding area. These recommendations were made despite the lack of evidence establishing that Dr. Walker had violated any correct or applicable standard of care, and despite overwhelming evidence showing that Dr. Walker was a conscientious surgeon whose care was consistent with all relevant standards.

11. In reaching its unfounded conclusions, the MEC was led by and relied in significant part on descriptions of care and alleged standards provided by two of Dr. Walker's

chief competitors in Lufkin – Dr. Melvin Cole and Dr. Gregory DeArmond.  Despite the lack of a reasonable factual basis to investigate the care provided by Dr. Walker to the two patients referenced above, the MEC sent the cases for outside review by The Greely Company.[1]  The MEC also created an Ad Hoc committee of three physicians, none of whom were general surgeons, to review every surgical case performed by Dr. Walker since he came on staff at Lufkin.  However, in so doing, the MEC ignored numerous crucial and salient facts and documents, withheld them from the outside reviewer, placed inordinate emphasis on recitations by interested parties including Dr. Cole and Dr. DeArmond, and requested the creation of incident reports containing statements contradicted by facts in the medical record, among other things.  Such information cannot reasonably be relied upon to evaluate Dr. Walker's surgical skill or judgment or to implement adverse recommendations.

12. The Ad Hoc review on which the MEC relied was also insufficient justification for adverse recommendations or restrictions.  Not only was the Ad Hoc Committee composed of Dr. Huber (an internist), Dr. Bailey (an ENT) and a third physician (an OB/GYN), none of whom practice general surgery, but the cases reviewed in no way support the adverse recommendation.

13. The MEC also allowed the peer review process to be initiated, influenced and directed by at least two of the four competing general surgeons in Lufkin – Dr. Cole and Dr. DeArmond – who had an obvious economic interest in seeing Dr. Walker's privileges limited or eliminated altogether.  Dr. Cole is a solo practitioner with a close relationship to Angelina Surgical Associates.  Angelina Surgical Associates is Dr. DeArmond's practice group, which on information and belief was formed by Dr. DeArmond in 2001, who serves as the group's President and Director, and includes only two other general surgeons.  Together, Dr. Cole and

---

[1] The Greeley Company is an outside company that performs external peer review services on behalf of hospitals. *See* http://greeley.com/consulting/external-peer-review-services.

DeArmond's Angelina Surgical Associates constitute the only general surgeons providing general surgery services, including colon surgery procedures, in Lufkin, Texas and within a 40 mile radius.

14. Following the initial MEC recommendation, a hearing was requested by Dr. Walker as provided for in the Memorial Lufkin Medical Staff Bylaws. Also pursuant to the Bylaws, the hearing was conducted by a Hearing officer selected by the MEC, before a Medical Staff Fair Hearing Committee ("Hearing Committee"), which was comprised of five physicians selected by the MEC. Defendants Dr. Huber and Dr. Bailey also attended the hearing, along with the president of Memorial Lufkin, outside counsel for the MEC and in house counsel from Memorial Lufkin's parent corporation, Catholic Health Initiatives. Dr. Walker was represented by the undersigned.

15. Tellingly, the Hearing Committee chosen by the MEC – after a thorough review of the evidence which took place over three nights and included testimony from live witnesses called by both Dr. Walker and the MEC – recommended *rejecting* all of the adverse actions recommended by the MEC. In so doing, the Hearing Committee plainly did not believe there was merit to the MEC's stated basis for the adverse action, and specifically unanimously found that Dr. Walker DID NOT violate any standard of care with respect to the two cases ostensibly made the basis for the investigation and ensuing MEC actions and recommendations. The Hearing Committee also unanimously found "the results and findings from the Ad Hoc review did not appear to be significant," clearly meaning the Ad Hoc committee review did nothing to support the MEC's adverse recommendations. The hearing record is replete with evidence supporting the Hearing Committee's findings and conclusions.

16. Defendants then betrayed their true discriminatory and anti-competitive motives when the MEC disregarded the Hearing Committee's recommendation to reject all of the MEC's adverse recommendations, and instead continued to insist on a course of action that would cause further economic and professional harm to Dr. Walker while benefiting the only other physicians practicing general surgery in Lufkin – Dr. Cole and Dr. DeArmond's Angelina Surgical Associates. Perhaps most significantly, the MEC continued to insist that Dr. Walker be required to retain and pay a proctor.

17. After the MEC issued its final recommendations, Dr. Walker filed an appeal. An Appellate Review Committee, comprised of a subset of the hospital's Board of Directors (in this case, four lay people and a pediatrician), then reviewed the decision and made a report and recommendation to the full Board of Directors, recommending that the Board of Directors affirm all of the recommendations of the MEC in its September 16, 2016 report, including the proctoring requirement. Finally, the Board voted to affirm the Appellate Review Committee's recommendation at its December 19, 2016 board meeting, making the MEC's determinations "immediately effective and final." With respect to proctoring, however, the Board did not "assign" (or even provide access) to a proctor for Dr. Walker, nor did it order that Dr. Walker must have a proctor "for a period lasting more than 30 days," which both become important with respect to Defendants' actions in connection with reporting to the NPDB and whether such reporting is proper and/or premature.[2] Rather, the Board specifically ordered that:

> Dr. Walker is to have mandatory concurring proctoring under the supervision of a surgical proctor approved by MEC and appropriately credentialed, all at the expense of Dr. Walker. Dr. Walker will be required to have 5 bowel surgery cases proctored. The proctor will be required to submit progress reports to the MEC at intervals mutually agreed upon by

---

[2] This issue is discussed more fully in Plaintiff's Application for Temporary Restraining Order and Memorandum in Support filed contemporaneously herewith, which is incorporated by reference.

the MEC and the proctor. The proctor shall not be a member of the current medical staff at CHI St. Luke's Health Memorial Lufkin or Livingston.

18. In addition to Defendants' unreasonable and wrongful investigation and failure to comply with HCQIA in connection with the entirety of its professional review action relating to Dr. Walker, similarly situated Caucasian physicians were not treated in the same respect and with the same adverse "peer review" actions as Dr. Walker, who is African American. On information and belief, there have been several Lufkin general surgery cases which resulted in complications and/or adverse outcomes that were never sent for outside review or deemed anything other than "managed appropriately." Further, such adverse patient outcomes did not result in peer review investigations or the loss of Professional Services Agreements or "on call" contracts for Caucasian physicians. As such, the criteria and standards applied when evaluating Dr. Walker's care were not applied equally to the Caucasian general surgeons, who are also his competitors.

## IV. DEFENDANTS ARE NOT ENTITLED TO IMMUNITY UNDER "HCQIA"

19. Immunity under the Health Care Quality Improvement Act ("HCQIA") only applies if a professional review action is taken:

> (1) in the reasonable belief that the action was in the furtherance of quality health care,
>
> (2) after a reasonable effort to obtain the facts of the matter,
>
> (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, *and*
>
> (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the notice and hearing requirements.

20. Thus, Dr. Walker must only establish that the professional review action was taken without satisfying any *one* of the foregoing criteria for Defendants to lose immunity for their participation in the professional review action against Dr. Walker.  The evidence clearly shows that the action taken against Dr. Walker was not taken in the reasonable belief that the action was in furtherance of quality health care, but rather was a pretext for other wrongful and discriminatory actions.

21. In addition, Defendants and the MEC did not make a reasonable effort to obtain the facts of the matter, the adverse decision was based on an unreasonably restrictive and inappropriate cases, and Defendants and the MEC did not have a reasonable belief that their actions were warranted by the facts.

22. Further, immunity under HCQIA only applies to claims for money damages; it does not apply to Plaintiff's claims for injunctive or declaratory relief.  HCQIA also specifically excludes civil rights claims from immunity, including those brought under 42 U.S.C. § 1981.

23. Accordingly, Defendants are not entitled to immunity under HCQIA.

## V. RESPONDEAT SUPERIOR / VICARIOUS LIABILITY / CIVIL CONSPIRACY/"CAT'S PAW"

24. At all relevant times, Defendant Dr. Bailey, as Chief Medical Officer of Memorial Lufkin, and other agents of Memorial Lufkin working under its direction or on its behalf in furtherance of unlawful and improper actions, acted in furtherance of the business of Memorial Lufkin.  Memorial Lufkin is liable for the improper acts and omissions of its Chief Medical Officer, Dr. Bailey, as well as other agents of Memorial Lufkin, under the legal doctrines of respondeat superior, vicarious liability, and/or "cat's paw" theory of liability.

25. Additionally or in the alternative, Defendants Memorial Lufkin (acting by and through its agents/employees/principal officers) and other third parties acted together to carry out

the improper and illegal actions, constituting civil conspiracy in carrying out their wrongful activities.

## VI. CONDITIONS PRECEDENT

26. All conditions precedent to Dr. Walker's right to recover have been performed or have occurred.

## VII. CAUSES OF ACTION

### COUNT ONE
### BUSINESS DISPARAGEMENT AND CONSPIRACY TO COMMIT SAME

27. Plaintiff repeats the allegations set forth above as if fully set forth herein.

28. Defendants published disparaging words about Dr. Walker's professional competency. Such disparaging words included false claims about Dr. Walker's performance as a surgeon and his professional competence outside the protections of any peer review committee, including statements by one or more representatives of Memorial Lufkin that Dr. Walker was "having trouble with his privileges at the hospital and he will not be practicing here (Livingston) much longer," and other highly inflammatory, false statements concerning Dr. Walker.

29. Defendants did and intended to harm Dr. Walker's practice, economic and business interests.

30. Defendants published these disparaging words with malice, without privilege, and knowing they were false, or with reckless disregard as to their truth or falsity. Defendants published these disparaging words to Dr. Walker's colleagues and peers in the Lufkin and Livingston medical communities.

31. As a result of Defendants' disparagement, Plaintiff has suffered and will continue to suffer special economic damages, including but not limited to actual damages for lost profits

and loss of past and future earnings.  Plaintiff has also suffered damages for both past and future mental anguish and emotional distress as a result of Defendants' disparagement.

## COUNT TWO
### TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS RELATIONS AND CONSPIRACY TO COMMIT SAME

32.Plaintiff repeats the allegations set forth above as if fully set forth herein.

33.Due to Defendants' wrongful and unlawful actions, Dr. Walker has been shut out from the Professional Services Agreement ("on call" contract) he had with Lufkin since 2014, and as of November 1, 2016, Dr. Walker was excluded from the similar Professional Services Agreement for general surgery call at CHI St. Luke's Health Memorial Livingston, resulting in lost compensation guaranteed by the contracts, as well as lost revenue from the cases he would have done while on call.  Dr. Walker has been refused a new contract at both hospitals while Dr. Cole and Dr. DeArmond's Angelina Surgical Associates have both received new Professional Services Agreements in Lufkin and Livingston.

34.In addition, Dr. Walker has had longstanding and continuous professional relationships with non-surgeon physicians in the community, and these relationships resulted in patient referrals for surgical procedures.  As a result of Defendants' tortious and wrongful conduct, Dr. Walker lost opportunities that he would have, in all reasonable probability, otherwise had, including but not limited to relationships with patients that he would have developed through providing on-call services, relationships with other doctors in the Lufkin and Livingston areas that would have served as patient referral sources for Dr. Walker; and relationships with patients in the Lufkin and Livingston areas that Dr. Walker would have developed on his own through provision of the full scope of his surgical skills and exercise of his full privileges.

35. Defendants engaged in independently tortious or unlawful acts, including but not limited to disparagement of Dr. Walker.

36. Defendants engaged in those independently tortious and unlawful acts with a conscious desire to prevent Dr. Walker from developing both patient and referral doctor relationships or with knowledge that the interference was certain or substantially certain to occur as a result of their conduct.

37. As a result of Defendants' interference, Plaintiff has suffered and will continue to suffer actual damages including damages for lost profits, loss of past and future earnings and/or earning capacity. In addition, Plaintiff has suffered damages for both past and future mental anguish and emotional distress.

## COUNT THREE
## DISCRIMINATION UNDER SECTION 1981

38. Plaintiff repeats the allegations set forth above as if fully set forth herein.

39. Defendants' discrimination against Dr. Walker, who is African American, is in violation of the rights of Plaintiff afforded him by 42 U.S.C. §1981.

40. Defendants intentionally deprived Dr. Walker of the same rights as are enjoyed by white citizens in the creation, performance, enjoyment, and all benefits and privileges of his contractual relationship with Memorial Lufkin and CHI St. Luke's Health Memorial Livingston, in violation of 42 U.S.C. §1981.

41. As a result of Defendants' discrimination in violation of Section 1981, Dr. Walker has been denied contractual rights and employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief. Dr. Walker has also suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling him to compensatory damages.

42. In their discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to the rights of Dr. Walker, thereby entitling him to an award of punitive damages.

43. To remedy the violations of the rights of Plaintiff, Plaintiff request that the Court award him the relief prayed for below.

## COUNT FOUR
## BREACH OF CONTRACT

44. Plaintiff repeats the allegations set forth above as if fully set forth herein.

45. Dr. Walker had a Professional Services Agreement with Memorial Lufkin, under which Dr. Walker provided general surgery on call services.  Since February 2016, Memorial Lufkin has wrongfully prevented Dr. Walker from providing such services, in breach of the Professional Services Agreement, thereby causing damages.

46. Although Dr. Walker ultimately signed a letter agreement stating he would not participate in the call roster for the emergency room in Lufkin, and later in Livingston, while the peer review process was underway, such agreement was procured by duress, was intended to be of limited duration, and was executed on implied threat of summary suspension and immediate reporting to the National Practitioner's Database, which would cause further economic and professional harm to Dr. Walker.  Because Memorial Lufkin did not have the contractual right to suspend his on call services pending the peer review process, such conduct amounts to breach of contract for which Plaintiff seeks damages.

## COUNT FIVE
## CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

47. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, Plaintiff requests that the Court:

    (i)    Declare that the peer review process and subsequent findings were malicious, discriminatory, and unjustified such that the adverse actions taken against Dr. Walker, including the proctoring requirement, are null and void;

    (ii)    Declare that a report to the NPDB was not and is not required based on the unsupported and unlawful actions of Memorial Lufkin, or alternatively, declare that even if the proctoring requirement is valid, it does not constitute a reportable event under the NPDB's guidelines, or is at a minimum premature;

    (iii)    Declare that Memorial Lufkin should not have sent a report to the NPDB and order Memorial Lufkin to submit a Void Report because the action was not reportable because it did not meet NPDB reporting requirements;

    (iv)    Issue an injunction to prohibit Memorial Lufkin from enforcing, following, relying on, or otherwise utilizing the adverse actions Memorial Lufkin has taken against Dr. Walker; and/or

    (v)    Issue an injunction to prohibit Memorial Lufkin from reporting Dr. Walker to the NPDB because the proctoring requirement is not a reportable event under the NPDB's guidelines.

    (vi)    Issue an injunction requiring Lufkin Memorial to void any NPDB report made on or about January 19, 2017.

## ATTORNEYS' FEES

48. Plaintiff repeats the allegations set forth above as if fully set forth herein.

49. Plaintiff would show that he is entitled to an award of attorney's fees and costs under Chapter 38 of the Texas Civil Practice & Remedies Code, as well as 42 U.S.C. § 1988. Plaintiff has been required to hire attorneys and has incurred attorneys' fees in order to seek recovery against Defendants.

## VIII. JURY DEMAND

50. Plaintiff demands a trial by jury.

## IX. PRAYER

For these reasons, Plaintiff Dr. Walker asks that Defendants be cited to appear and answer and that Plaintiff have judgment against Defendants for the following:

    a.    Damages for lost profits;

    b.  Damages for loss of past and future earnings;

    c.  Damages for past and future mental anguish and emotional distress;

    d.  Damages for humiliation, distress, inconvenience and loss of enjoyment of life;

    e.  Punitive/exemplary damages;

    f.  Attorney's fees and costs of court;

    g.  Appropriate declaratory and injunctive relief, including:

        (i)  declaring that the peer review process and subsequent findings were malicious, discriminatory, and unjustified such that the adverse actions taken against Dr. Walker, including the proctoring requirement, are null and void;

        (ii)  declaring that a report to the NPDB was not and is not required based on the unsupported and unlawful actions of Memorial Lufkin, or alternatively, declare that even if the proctoring requirement is valid, it does not constitute a reportable event under the NPDB's guidelines, or is at a minimum premature;

        (iii)  declaring that Memorial Lufkin should not have sent a report to the NPDB and order Memorial Lufkin to submit a Void Report because the action was not reportable because it did not meet NPDB reporting requirements;

        (iv)  enjoining Memorial Lufkin from enforcing, following, relying on, or otherwise utilizing the adverse actions it has taken against Dr. Walker, or alternatively, enjoining Defendant from reporting Dr. Walker to the NPDB because the proctoring requirement is not a reportable event under the NPDB's guidelines;

        (v)  enjoining Defendant from reporting Dr. Walker to the NPDB because the proctoring requirement is not a reportable event under the NPDB's guidelines; and/or

        (vi)  Issue an injunction requiring Lufkin Memorial to void any NPDB report made on or about January 19, 2017.

    h.  All other relief, in law and in equity, to which Plaintiff may be entitled.

Respectfully submitted,

*/s/ Laura Reilly O'Hara*
**STRASBURGER & PRICE, LLP**

Laura Reilly O'Hara
State Bar No. 00784694
901 Main Street, Suite 6000
Dallas, TX 75202
214.651.4300
214.659.4094 (fax)
laura.ohara@strasburger.com

Charles "Scott" Nichols
State Bar No. 14994100
909 Fannin Street, Suite 2300
Houston, Texas 77010
713.951.5600
832.397.3556 (fax)
scott.nichols@strasburger.com

Russell C. Brown
State Bar No. 03167510
Russell C. Brown, P.C.
300 West Main Street
P.O. Box 1780
Henderson, Texas 75653
(903) 657-8553
(903) 655-0218 (fax)
Russell@rcbrownlaw.com

J. Mark Mann
State Bar No. 12926150
300 West Main Street
Henderson, TX 75652-3109
mark@themannfirm.com

**ATTORNEYS FOR PLAINTIFF**
**FRANK S. WALKER, M.D.**