**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| FRANK S. WALKER, M.D., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.  2:17-CV-00066-JRG |
| v. | § | |
| | § | |
| MEMORIAL HEALTH SYSTEM OF EAST | § | |
| TEXAS D/B/A CHI ST. LUKE'S HEALTHY | § | |
| MEMORIAL  HOSPITAL  LUFKIN,  MD | § | |
| HUNT HUBER, MD DAVID BAILEY, | § | |
| | | |
| Defendants. | | |

## MEMORANDUM AND OPINION ORDER

Before the Court is Plaintiff Dr. Frank S. Walker's Motion for Preliminary Injunctive

Relief filed against Defendant Memorial Health System of East Texas d/b/a CHI St. Luke's Health

Memorial Lufkin ("the Hospital") (Dkt. No. 2). On February 2, 2017, the Court held a hearing

where the parties presented evidence and argument of the motion.[1] (*See* Dkt. No. 15.) Upon careful

consideration of all such evidence and arguments, the Court is persuaded that a preliminary

injunction is both necessary and warranted to maintain the status quo and prevent Dr. Walker from

suffering irreparable harm during the pendency of this litigation. Accordingly, Dr. Walker's

motion is GRANTED.

---

[1] Dr. Walker first sought an *ex parte* temporary restraining order, which the Court denied. Alternatively, the Court expedited the evidentiary hearing on the Motion for Preliminary Injunction, where both parties could address the disputed issues of law and fact. The Court has further expedited its issuance of this opinion within a week of the hearing.

# BACKGROUND

Dr. Walker is a physician who holds clinical privileges at the Hospital. These privileges permit him to perform certain surgeries, including major abdominal surgeries. Various issues arose in conjunction with Dr. Walker's treatment of two patients at the Hospital, culminating in peer review of Dr. Walker. Upon conclusion of this peer review, the Hospital's Medical Executive Committee ("MEC") made a series of recommendations regarding Dr. Walker. One recommendation in particular is at the center of the present dispute:

> Dr. Walker is to have mandatory concurring proctoring under the supervision of a surgical proctor approved by MEC and appropriately credentialed, all at the expense of Dr. Walker. Dr. Walker will be required to have 5 bowel surgery cases proctored. The proctor will be required to submit progress reports to the MEC at intervals mutually agreed upon by the MEC and the proctor. The proctor shall not be a member of the current medical staff at CHI St. Luke's Health Memorial Lufkin or Livingston.

The MEC's recommendations were reviewed but ultimately upheld through an internal appellate process before being presented to the Hospital's Board of Directors. On December 19, 2016, the Board adopted the MEC's recommendation, requiring Dr. Walker to have five bowel surgery cases proctored at his expense.[2] The Board did not specify a timetable for completion of the proctored cases. A month later, the Hospital filed an adverse report of Dr. Walker with the National Practitioner Data Bank ("NPDB" or "Data Bank") disclosing the proctoring requirement and Publishing to the Data Bank that the basis for the action was Dr. Walker's "substandard or inadequate skill level."

---

[2] Following the initial MEC recommendations, Dr. Walker requested a hearing before a Medical Staff Fair Hearing Committee, as provided by the Hospital's bylaws. This committee, which was comprised of five physicians selected by the MEC, examined the relevant evidence and recommended rejecting all of the adverse actions recommended by the MEC, including the proctoring sanction.

In general, the Data Bank is a federal program that contains various negative information on health care practitioners including medical malpractice payments, adverse licensure actions, exclusions from Federal or State healthcare programs, and negative actions or reports made against practitioners by hospitals. Though not accessible by the general public, the Data Bank is accessible by Federal and State licensing authorities (including the Texas Medical Board), hospitals and other healthcare entities, and healthcare insurance providers.

The Data Bank was established in conjunction with the Health Care Quality Improvement Act ("HCQIA") in an effort to advance the quality of medical care by encouraging physicians to participate in peer review and by restricting the ability of incompetent physicians to move from state to state without disclosing their previous incompetent performance. *See* 42 U.S.C. § 11101. Ostensibly, practitioners with one or more adverse reports in the Databank may find it difficult to build or maintain their practices, as healthcare entities, including hospitals and health insurance companies, are likely reluctant to associate with practitioners who have been deemed incompetent through peer review.

Since an adverse report almost certainly proves detrimental to a practitioner's livelihood, healthcare entities must comply with several procedural and substantive requirements prior to filing such a report. Not every adverse peer review or sanction is reportable. For example, and critical to the resolution of this matter, proctoring sanctions are only reportable if a proctor is assigned to the practitioner "for a period longer than 30 days." *See* 42 U.S.C. § 11133(a)(1)(A); NPDB Guidebook at E-37.[3] Proctoring sanctions that do not last longer than 30 days, however, are not considered a restriction of clinical privileges and "should not be reported to the NPDB." NPDB Guidebook at E-37.

_____

[3] The NPDB Guidebook is available at https://www.npdb.hrsa.gov/resources/NPDBguidebook.pdf

Following the Hospital's adverse report to the NPDB, Dr. Walker lodged an administrative dispute of the report and filed this action seeking immediate injunctive relief. During the pendency of Dr. Walker's motion for injunctive relief, the Texas Medical Board became aware through the Data Bank of the Hospital's adverse report and initiated a formal review of Dr. Walker's conduct.

## LEGAL STANDARD

An applicant is entitled to a preliminary injunction if he or she can show: (1) a substantial likelihood of success on the merits of the claim; (2) a substantial threat of irreparable injury or harm for which there is no adequate remedy at law; (3) that the threatened injury to the applicant outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest. *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996). Issuance of a preliminary injunction is within the discretion of the Court. *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015). Findings of fact are subject to a clearly-erroneous standard of review, while conclusions of law are subject to a broad review. *Janvey v. Alquire*, 647 F.3d 585, 591-92 (5th. Cir. 2011).

## ANALYSIS

### A. Right to Injunctive Relief Under HCQIA

As a threshold matter, the Hospital contends that the Court lacks authority to issue a preliminary injunction because HCQIA does not provide a private right of action. In pursuing this argument, the Hospital misreads the complaint and disregards binding Fifth Circuit precedent.

First, Dr. Walker's claims are not brought as a private right of action under HCQIA. Dr. Walker's complaint states the following causes of action: (1) business disparagement; (2) tortious interference with contract and prospective business relations; (3) racial discrimination under 42 U.S.C. § 1981; (4) breach of contract; and (5) declaratory judgment under 28 U.S.C. §§ 2201-

2202. (Dkt. No. 1.) While it is true that the resolution of this case necessarily *involves* interpreting provisions of HCQIA, the premise that Dr. Walker is asserting a private right of action *under* HCQIA is not supported by the complaint.

Second, the Fifth Circuit has made clear in *Poliner v. Texas Health Systems* that "[t]he doors of the courts remain open to doctors who are subjected to unjustified or malicious peer review, and they may seek appropriate injunctive and declaratory relief in response to such treatment." 537 F.3d 368, 381 (5th Cir. 2008). The injunctive and declaratory relief sought by Dr. Walker in the present motion is precisely the sort authorized by *Poliner*. Rather than even address or distinguish this broad, binding precedent, the Hospital obfuscates the case law and urges the Court to rely on non-binding precedent from other district courts and state courts. While HCQIA immunity may ultimately bar Dr. Walker from recovering money damages, the Court need not resolve that issue at this juncture. The motion before the Court concerns only injunctive relief, which is not subject to HCQIA immunity. *Id.* ("Congress limited the reach of [HCQIA] immunity to money damages.").

### B. Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits, Dr. Walker must demonstrate that the Hospital's adverse report to the NPDB was likely improper under the governing statutes and guidelines. Dr. Walker is not required to demonstrate that he will ultimately prevail on his claim for money damages. The Court finds that Dr. Walker has satisfied this element.

The parties agree that the underlying issue turns on whether the sanction handed down from the Board qualifies as a proctoring assignment "for a period of longer than 30 days." *See* 42 U.S.C. § 11133(a)(1)(A); NPDB Guidebook at E-37. If the proctoring assignment does not satisfy this requirement, then it is considered a non-reportable sanction. The Hospital contends that since 30

days passed without Dr. Walker completing five proctored bowel surgery cases, the 30-day requirement has been satisfied and the Hospital is required to file an adverse report with the NPDB. Dr. Walker responds that the terms of the proctoring sanction contain no temporal limitations— the five qualifying cases could be completed within a week, a year, or longer.

The Court agrees with Dr. Walker. The terms of the Board's proctoring sanction do not specify the duration of the proctoring assignment, and thus are not reportable. When Congress authored HCQIA, it decided to set a bright-line temporal threshold of 30 days for reportable proctoring sanctions. This requirement gives hospitals and practitioners certainty regarding which proctoring sanctions are reportable. Whether a proctoring sanction is reportable should be established by the terms of the sanction at the time it is delivered, not by whether, in fact, it takes more than 30 days to satisfy the requirement. To find otherwise would lead to absurd results. For instance, a sanctioned surgeon in a busy Dallas hospital may be able to quickly find a proctor and complete the set number of cases within 30 days. In contrast, a surgeon in a Lufkin hosptial given an identical sanction may be unable to promptly secure a proctor and complete the set number of cases within 30 days. In this scenario, though given precisely the same proctoring sanction, the Dallas surgeon would not be reported to the NPDB, and the Lufkin surgeon would be reported. The Court declines to read the NPDB reporting requirement in such a way that discriminates against practitioners in rural communities.

Reading the sanction as it is written and not in light of what actually transpires comports with other judicial doctrines of interpretation. For instance, when determining the applicability of the Statute of Frauds, courts interpret the one-year requirement to mean that performance necessarily takes over a year, not whether it turns out, after the fact, that performance was not completed in less than a year. *See Cunningham v. Healthco. Inc.*, 824 F.2d 1448, 1455 (5th Cir.

1987). Here, since the proctoring sanction against Dr. Walker did not necessarily last "for a period longer than 30 days," the Court will not look back with the benefit of hindsight to determine whether, in fact, 30 days have passed prior to completion of the set number of cases.

Although the Hospital was aware of the reporting requirements (including the 30-day requirement) set forth by HCQIA and the NPDB Guidelines and had access to competent legal counsel, it nevertheless decided to adopt a proctoring requirement that is silent as to duration. It offered no explanation for such silence. The Hospital could have easily drafted a sanction against Dr. Walker that would have both addressed the 30-day requirement and specified the number of proctored cases Dr. Walker must complete. For example, the sanction could have required Dr. Walker to receive proctoring for 5 bowel surgery cases which procedures "shall not be completed within less than 30 days." The language employed by the Hospital could have easily been drafted to trigger or not trigger the reporting requirement. Why the Hospital failed to do so is a mystery. That they failed to do so is unquestioned.

### C. Irreparable Harm

An adverse report on the NPDB that deems a surgeon to have "substandard or inadequate skill" is intrinsically harmful to that surgeon's practice, professional reputation, and livelihood. At the hearing, testimony was elicited that any hospital at which Dr. Walker presently holds privileges or at which Dr. Walker might seek future privileges would have access to the adverse report. Indeed, every hospital, managed care organization, or physician employer that might be interested in hiring or contracting with Dr. Walker is required to query the NPDB. The presence of the adverse report carries an indelible stigma that diminishes Dr. Walker's reputation and calls into question his ability to render competent medical services. An erroneously filed report announcing to all interested parties that a physician has been sanctioned, suspended, or lacks the adequate skill

to practice medicine carries with it the potential to immediately and irrevocably harm that physician and his practice. This stigma and reputational harm poses a substantial threat to Dr. Walker's ability to gain or maintain employment to support his practice.

At the hearing, Dr. Walker presented evidence of other sources of imminent harm. For instance, it is undisputed that medical malpractice insurance carriers will be made aware of the adverse report and likely increase Dr. Walker's insurance premiums or drop him from their coverage altogether when his policy is up for renewal later this month. Additionally, based solely on the Hospital's report, the Texas Medical Board has already launched a review of Dr. Walker to determine whether he has violated the Medical Practice Act. This review could culminate in an official investigation and restrictions on Dr. Walker's ability to practice medicine in Texas.

In response, the Hospital argues there can be no irreparable harm until Dr. Walker exhausts all available administrative remedies. To be sure, Dr. Walker is permitted to file, and indeed has filed, a dispute of the NPDB report. The Court recognizes that, as a general rule, parties must, "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992). However, where the administrative remedies are not expressly shown to require prior exhaustion, the Supreme Court has listed three situations where the individual's interests weigh against such: (1) where "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) where the agency lacks power to grant effective relief; and (3) where the agency is "shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146-48.

Without reaching the second or third categories, the Court finds that requiring Dr. Walker to first spend, at a minimum, many months exhausting his administrative remedies would occasion the sort of undue prejudice alluded to by the Supreme Court. The injunctive relief that Dr. Walker

seeks is very time sensitive, and the dissemination of this report throughout the relevant medical community is a bell that cannot otherwise be unrung. Moreover, even if Dr. Walker is able to overcome the high hurdle of HCQIA immunity, the wide array of professional, reputational, and economic injuries which Dr. Walker faces is difficult to quantify, rendering a remedy at law insufficient. Having considered the totality of the circumstances, the Court is persuaded that Dr. Walker faces imminent irreparable harm, and any further delay would severely prejudice Dr. Walker and dilute the impact of both injunctive and declaratory relief.

### D. Balancing Harm

The prospective harm that Dr. Walker faces has been described in detail above. On the other side of the ledger, the Hospital claims that a court-ordered injunction would force the Hospital "to violate federal law by not making the report." (Dkt. No. 10 at 13.) This is not a credible argument. It is the province of the federal courts—not the Hospital—to determine the requirements of HCQIA, a federal statute. Any injunctive relief ordered by the Court would compel the Hospital to comply with federal law, not violate it.

### E. Public Interest

Finally, the Court finds that a preliminary injunction will not disserve the public's interest. Congress has already considered the competing interests of the public and medical practitioners and determined that some (but not all) actions against practitioners are reportable. Congress drew a bright-line temporal standard. Proctoring sanctions in excess of 30 days must be reported; all other proctoring sanctions are not reportable. The Court has found that the proctoring sanctions placed on Dr. Walker are not reportable and sees no basis to second guess this Congressional policy determination under these circumstances. To hold otherwise would simply read the 30-day

requirement out of the statute and applicable NPDB guidelines. It would also permit erroneous reporting of adverse actions of any duration.

## CONCLUSION

For the foregoing reasons, Dr. Walker's Motion for Preliminary Injunctive Relief (Dkt. No. 2) is GRANTED. The Court hereby ORDERS Defendant Memorial Health System of East Texas d/b/a CHI St. Luke's Health Memorial Lufkin, its respective officers, agents, employees, and anyone acting on its behalf to immediately submit to the National Practitioners Data Bank a Void Report regarding Dr. Walker, and all such entities and persons shall refrain from filing any other statements or reports with the National Practitioners Data Bank relating to the actions the Hospital has taken against Dr. Walker in connection with the peer review process that is the subject of this lawsuit, including the imposition of a proctoring requirement, during the pendency of this suit.

**So ORDERED and SIGNED this 8th day of February, 2017.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE